Grover W. Watson, Trustee, Complainant and Appellee, v. Laura E. Willerton et al., Defendants. Amos Wilson, Administrator of the Estate of Louisa Wilson, Deceased, Appellant.

Gen. No. 8,417.

392

Heard in this court at the October term, 1929. ▮ Opinion filed June 11, 1930.

F. K. LEMON and L. O. WILLIAMS, for appellant.

HERRICK & HERRICK, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case the appellee Grover W. Watson filed a bill in equity in the circuit court of DeWitt county alleging that on the 6th day of March, 1928, Smith Fuller and his wife, and Kempton S. Fuller and his wife, being then the owners and in possession of certain real estate, namely 211 acres of land in DeWitt county, made, executed and acknowledged and delivered to him their certain warranty deed; and thereby conveyed to him the land referred to in fee simple; subject however to an easement theretofore granted to the Ozark Pipe Line Corporation and to a mortgage of $21,000 payable to the Illinois Joint Land Stock Bank of Monticello, Illinois. The appellee further avers in his bill that while the deed of conveyance referred to upon its face is a statutory warranty deed in the usual form, that the conveyance was made to and accepted by the appellee for the benefit of the creditors of the grantors Smith Fuller and Kempton S. Fuller; it being then and there agreed between the grantors and the grantee, that the real estate in question should be sold; and that after the payment of the costs and expenses of the trust involved, the proceeds of said real estate received by the appellee should be distributed and paid out ratably and equally between

all the creditors of said Smith Fuller and Kempton S. Fuller, except such creditors as hold mortgage liens upon the aforesaid real estate. It is also alleged in the bill that the appellant Amos Wilson, as administrator of the Estate of Louisa Wilson, deceased, is among the other creditors. The appellee further avers in the bill that on or about the 6th day of August, 1928, he sold the aforesaid premises and made a contract for that purpose in writing with one James S. Sullivan of the county of McLean and State of Illinois on the 10th day of August, 1928; that in said written contract of sale the said purchaser Sullivan agreed to pay the sum of $25,320; and that the purchaser Sullivan also agreed to assume the amount of the principal debt due on the mortgage to the Illinois Joint Stock Land Bank as of March 1, 1929. The appellee further alleges that the price which the premises were sold for to Sullivan was the fair and reasonable cash market value of the same at that time; and that the contract of sale is fair, just and equitable and made for the benefit of the creditors of Smith Fuller and Kempton S. Fuller. It is further alleged in the bill that on or about the 30th day of April, 1928, and subsequent to the execution and delivery of the warranty deed to the appellee, the appellant Amos Wilson, as administrator of the estate of Louisa Wilson, deceased, recovered a judgment in the circuit court of DeWitt county for the sum of $9,366.60 and costs, against appellee's grantors Kempton S. Fuller and Smith Fuller, and that said judgment has never been paid and still remains in full force and effect and has not been in any part satisfied; that the purchaser Sullivan has made objection to the appellee's title of the premises in question as trustee on account of the supposed lien of the judgment referred to and requested the appellant as administrator to release the aforesaid premises from any alleged claim or lien which he might

claim by virtue of said judgment; and that the appellee has made a demand upon said appellant as administrator that he execute a release or disclaim any right, title or interest or claim by virtue of the aforesaid judgment against the premises in question; that said Amos Wilson as such administrator has refused to execute any such disclaimer; or to execute any release of the alleged lien of the aforesaid judgment; but that the appellant as administrator improperly contends, that such judgment is a lien upon the aforesaid premises; and that he is entitled as administrator to be paid out of the proceeds of the sale of the aforesaid premises *pro tanto* as far as said purchase price will extend; and prior to any distribution that might be made of such proceeds of the sale amongst the several unsecured creditors of the said Kempton S. Fuller and Smith Fuller. And it is further alleged in the bill, that to pay the proceeds of said sale to the appellant as such administrator, under the claim made by him, would result in defeating the purpose for which said conveyance was made to him, and would result in none of the other creditors receiving anything out of the proceeds of said sale of the premises. It is also averred in the bill that while the judgment referred to constitutes no lien upon the premises in question nor any part thereof, nor upon the proceeds which may be obtained by the appellee out of the sale of said premises, yet the said judgment by reason of the claim of the appellant constitutes a cloud upon the appellee's title; and that the appellee would be unable to close the trade with the purchaser Sullivan without procuring an adjudication upon the alleged claim of the appellant. The bill prays for an adjudication and decree that the conveyance made to the appellee by the grantors Smith Fuller and Kempton S. Fuller was a just and equitable conveyance, and made solely for the benefit of the unsecured creditors of said grantors;

and that the judgment of the appellant administrator is not a lien upon the real estate conveyed or any part thereof; and is not a lien upon the proceeds derived from the sale of the premises; and that the appellant as administrator has no other claim against the proceeds of the sale of the premises other than his claim as an unsecured creditor to share ratably and equitably with the other creditors of the said grantors; and the bill further prays that it be decreed by the court that the premises were sold for a fair, full, ample consideration; and that the said contract between complainant and the purchaser Sullivan is a fair, just and reasonable contract; and that the court approve the making and delivery of said contract and direct the complainant to proceed to carry out said contract; and to make conveyance of the premises in accordance with the terms of the contract; and receive and collect the purchase price of the premises sold from the purchaser and distribute the same *pro tanto* among the aforesaid creditors of Smith Fuller and Kempton S. Fuller ratably and that the court further adjudicate and determine who the unsecured creditors of Smith Fuller and Kempton S. Fuller are.

The appellant as administrator filed an answer to the bill of complaint; and in the answer admits the recovery of the judgment in the amount stated in the bill; and avers that the same became a lien on all the right, title and interest of Kempton S. Fuller and Smith Fuller in all of the premises in question, subject to the rights of the Illinois Joint Stock Land Bank of Monticello for $21,000; and the answer denies that the complainant as trustee has any right or authority whatever in law to sell said land and distribute the proceeds among all the creditors; and further avers that the appellant as administrator was a judgment creditor; and had a lien upon said premises, which should be satisfied before any distribution of the pro-

ceeds of the sale is made by the complainant. The answer also alleges that the attempted sale by the appellee as set forth in the bill of complaint is void and of no effect; and, as a matter of law, is subject to all the rights of the appellant as a judgment creditor; and also avers that the appellee had full and complete knowledge of the appellant's judgment as it appeared of record in the circuit court of DeWitt county, before he entered into the contract of sale referred to; and that it was made by the appellee with full knowledge and notice of the rights and contentions of the appellant as a judgment creditor; and asks for an accounting between the appellee and the appellant for any moneys that have accrued to the appellee which came into the hands of appellee by virtue of the alleged trusteeship in the premises. The answer also denies that the price for which the land is purported to have been sold was a fair and reasonable price, and the then cash market value of said premises; and denies that the contract was fair and equitable; and admits that he refused to execute any release or disclaimer demanded of him by the appellee as such pretended trustee.

An amendment was later filed to the answer, in which it is alleged that the conveyance and the trust thereby created was void and of no effect because in conflict with section 9 of chapter 59 of Cahill's Revised Statutes, ¶ 9, which provides that "all declarations or creations of trust or confidences in any land, tenements and hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing; or else they shall be utterly void and of no effect." And the answer was also amended by an additional averment that the conveyance and trust created thereby was in conflict with section 4 of chapter 59 of Cahill's Revised Statutes, ¶ 4, which provides that

"every gift, grant, conveyance, assignment or transfer, or charge upon any estate, real or personal, or right or claim in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent, shall be void as against creditors, purchasers and other persons."

The appellant also filed a cross-bill, praying that the conveyance to the appellee be declared fraudulent, null and void as against the appellant, praying for the appointment of a receiver and for an accounting and for an adjudication that the appellant's judgment be declared to be a lien upon the premises in question.

A demurrer was filed to the cross-bill by the appellee, which was afterwards withdrawn by leave of court; and thereupon upon the motion of the appellee the cross-bill was stricken.

The cause was thereupon referred to a special master to take the evidence and report his conclusions; the special master reported the evidence taken, together with his conclusions, to which objections were filed; and the objections were overruled; and it was ordered by the court that the objections stand as exceptions.

Upon the hearing of the cause on the exceptions to the special master's report, the exceptions were overruled; and the special master's report and his conclusions approved by the court; and a decree was entered granting the relief prayed for in the bill. This appeal is prosecuted from the decree.

The record discloses that the proofs, made in the case sustain the material averments in the bill concerning the nature and purpose of the trust conveyance of the property of the grantors to appellee; and the sale of the same made by the appellee as trustee to James S. Sullivan; and that the amount of the pur-

chase price to be paid therefor represents the fair cash market value of the property.

Various errors are assigned by the appellant for reversal of the decree. It is contended that the deed of conveyance in question to the appellee was void because it was a voluntary conveyance of land made by the grantors when they were insolvent, and was a fraud upon appellant's rights as an existing creditor. The evidence does show that the conveyance in question was a transfer of all their property; and was made by the grantors when they were insolvent; but also that it was made in trust for the benefit of the creditors of the grantors, including the appellant; and was in its nature and effect a common-law assignment of all the property of the insolvent grantors to secure an equal distribution of the avails thereof among the unsecured creditors *pro tanto.*

In *Weber v. Mick,* 131 Ill. 520, the Supreme Court in passing on the nature and effect of such assignments of property adopts the definition given by Burrill in his Treatise on Assignments, which is as follows: "Voluntary assignments for the benefit of creditors are transfers, without compulsion of law by debtors, of some or all of their property, to an assignee or assignees, in trust to apply the same, or the proceeds thereof, to the payment of some or all their debts, and to return the surplus, if any, to the debtor. . . . Such assignments are termed voluntary, to distinguish them from such as are made by compulsion of law, as under statutes of bankruptcy and insolvency; . . . voluntary assignments for the benefit of creditors are in many respects peculiar to American law and practice, and have in this country acquired a technical signification; . . . a voluntary assignment for the benefit of creditors implies a trust, and contemplates the intervention of a trustee." *Walker v. Ross,* 150 Ill. 50. Common-law assignments

for the benefit of creditors may be legally made notwithstanding the fact that the National Bankruptcy Act suspended the statute concerning voluntary assignments for the benefit of creditors. *Pogue v. Rowe,* 236 Ill. 157.

Concerning the question of fraud raised by appellant, it may be pointed out what Lord Ellenborough said concerning the legal propriety of conveyance like the one in question. In the case of *Pickstock v. Lyster,* 3 Maule & Selwyn 371, Lord Ellenborough said, that an assignment for the benefit of creditors was, "an act of duty rather than a fraud, when no purpose of fraud is proved. The act arises out of discharge of the moral duties attached to the assignor's character of debtor, to make the fund available for the whole body of creditors." *Cardiff Gypsum Plaster Co. v. Hales Coal & Material Co.,* 239 Ill. App. 16.

Concerning the contention made, of hindering or delaying creditors in the collection of their claim by a transfer of property of this character, it was held in *Feltenstein v. Stein,* 157 Ill. 19, as follows: "Where the assignment is general in its character, and fair on its face, as placing all the debtor's property in the hands of the assignee for equal pro rata distribution among the creditors, the mere fact, that it delays particular creditors in the enforcement of their claims by the ordinary process of law, does not make it fraudulent and void. Such delay is a necessary incident in the discharge by the assignor of his duty to his creditors." And such a transfer of the property of an insolvent debtor will be carried into effect even though there are no assenting creditors. *Thompson Co. v. Whitehead,* 185 Ill. 454.

It is also contended that the trust involved is an express trust and therefore inasmuch as there is no writing manifesting the trust, it is void because in conflict with the provisions of the statute of frauds,

which are pleaded in defense in the answer of the appellant. It may be stated concerning this contention of appellant, that the defense of the statute of fraud is not available to him in this cause, because he is not a party to the trust agreement. The defense of the statute of frauds was available to the appellee, the deed being an absolute transfer of the property to him, but the appellee having waived it by his declaration of trust in the bill of complaint, it is not available to any party who is not a party to the trust agreement. *People v. Tombaugh,* 303 Ill. 591; *Pasquay v. Pasquay,* 235 Ill. 48. The purpose of the statute of frauds, requiring express trusts to be manifested or proved in writing, is for the benefit of those claiming title under the deeds or other instruments absolute on their face and not for the benefit of those seeking to defeat the operation of such deed. *Allen v. Woodruff,* 96 Ill. 11; *Myers v. Myers,* 167 Ill. 52. Where the trustee does not plead the statute of frauds, it is waived by the trustee, and no other party to the suit can insist on the statute as against their adversaries. *Myers v. Myers, supra.* In the case last cited it was held where the statute of frauds is moved by the trustee, an express trust may be established by parole proof. Where the statute of frauds is waived by the party who may invoke it, the case must be considered and decided without reference thereto. *Clayton v. Lemen,* 233 Ill. 435; *Willis v. Zorger,* 258 Ill. 574; *Cohen v. Friedman,* 259 Ill. 416; *Lee v. Bermingham,* 199 Ill. App. 497. An assignment for the benefit of creditors is a trust within the jurisdiction of a court of equity to guard and protect. *Reardon v. Taft,* 235 Ill. App. 75. And under such assignment or conveyance for the benefit of creditors as soon as the assignee accepts it, he becomes a trustee for the creditors, and they may compel the execution of the trust in a court of chancery. *Reardon v. Taft, supra; Howell v. Moores,* 127 Ill. 67; *Howe v.*

*Warren,* 154 Ill. 227; *Gibson v. Rees,* 50 Ill. 383. The owner of the property creating the trust is the only necessary party to the trust agreement. *Bergman v. Bergman,* 323 Ill. 73. In this case the trustee made a declaration of the trust in the bill of complaint which he filed in this cause; and it was competent and legally effective to express the trust in that way. *Fox v. Fox,* 250 Ill. 384; *White v. Ross,* 160 Ill. 56; *Myers v. Myers, supra.*

It is also contended by the appellant that the trust conveyance is void because in the creation of the trust in question no express power is given to dispose of the property by sale to carry into effect the purpose of the trust. In an assignment for the benefit of creditors however, the power of the sale of the property is necessarily implied. *Cherry v. Greene,* 115 Ill. 591; *Illinois Christian Mission Society v. American Christian Mission Society,* 277 Ill. 193.

It is also argued that under the trust agreement the trustee has discretion to sell the property on credit, and that such discretion invalidated the trust as an assignment for the benefit of a creditor. It is sufficient to say concerning this point that no such inference can reasonably be drawn from the trust agreement as established by the declaration of trust in the bill of complaint and by the evidence; moreover it appears from the bill of complaint and the evidence that the trustee has not sold the property on credit; but that under the contract of sale, the money constituting the purchase price will all have been paid to the appellee when the deed conveying the property to Sullivan is delivered.

Concerning the error assigned on striking of the cross-bill from the files, it may be said that while the legal propriety of this action of the court may be open to question, there is no reversal error involved, inasmuch as the record clearly discloses that the appellant

was not entitled to any relief under his cross-bill; and that all his rights as creditor could be and were adjudicated under the issues raised by his answer.

For the reasons stated, the decree is affirmed.

*Decree affirmed.*